```
                                                            1

                        JAMES KEE
                         - - - -
 1      IN THE UNITED STATES DISTRICT COURT FOR THE

 2           WESTERN DISTRICT OF PENNSYLVANIA

 3                       -----

 4   BURCHICK CONSTRUCTION COMPANY,)
     INC.,                         )
 5                                 )
              Plaintiff,           ) Civil Docket No.
 6                                 ) 05-CV-12E
         vs.                       )
 7                                 )
     HBE CORPORATION,              )
 8                                 )
              Defendant.           )
 9
                         -----
10

11          Deposition of JAMES KEE
           (Thursday, September 22, 2005)
12

13        Filed on behalf of Plaintiff
        BURCHICK CONSTRUCTION COMPANY, INC.
14

15      Counsel of Record for this Party:
           KURT F. FERNSLER, ESQUIRE
16              Reed Smith LLP
               435 Sixth Avenue
17          Pittsburgh, PA   15219

18

19

20              WORDZ R US
       1139 Oakwood Drive, Suite 100
21        Jefferson Hills, PA   15025
           Phone:  (412) 655-1553
22

23   REPRODUCTION OF THIS TRANSCRIPT IS PROHIBITED
     WITHOUT AUTHORIZATION FROM THE CERTIFYING AGENCY
24

25
```



EXHIBIT C

97

JAMES KEE

- - - -

1  the 902F back charge.

2    A.   Sure.

3    Q.   This dollar figure, $73,140, matches the

4  dollar figure in HBE's counterclaim in this

5  litigation.  So, I'm going to assume that that's

6  the counterclaim.  Is that fair?  Do you know?

7    A.   No, I don't know.  I don't know -- I

8  haven't seen the counterclaim.

9    Q.   Okay.  All right.  Now, this letter --

10 I'm sorry, the December 1, 2004 letter says, "You

11 are hereby notified of a forthcoming deduct

12 Change Order to reimburse HBE Corporation for

13 costs incurred to patch and grind concrete that

14 was out of tolerance, to patch and grind control

15 joints, to patch concrete walls in the elevator

16 shafts and to grind excess concrete from the

17 exterior columns of the canopies."  Do you see

18 that?

19   A.   Yes.

20   Q.   Underneath that, it indicates that

21 there's back charges for a flooring sub, a

22 drywall sub and a painting sub.

23   A.   Okay.

24   Q.   All the work described in the letter, the

25 patching and grinding the different areas, was

98
JAMES KEE

- - - -

1  that all performed by the flooring sub?
2  A.  I couldn't tell you.  There were various
3  subs involved.  I believe that we had different
4  subs doing different things.  A lot of --
5  obviously, the majority of this was done by the
6  flooring subcontractor, the Penn Installations.
7  Q.  All of these documents that are part of
8  Exhibit 16, there's a lot of them, these all
9  relate to Penn Installations.
10 A.  Okay.
11 Q.  Are you telling me that -- well, you
12 weren't personally involved in dealing with Penn
13 Installations on this back charge; is that right?
14 A.  No.  No, I wasn't.
15 Q.  Do you know who it was?
16 A.  Certainly it would be Jon Alderman, it
17 would be other members of the project team.
18 Q.  And you didn't talk to Jon Alderman to
19 prepare for today's deposition, right?
20 A.  As I said before, no.
21 Q.  Okay.  So, you probably can't -- can you
22 answer any questions about the backup to this?
23 A.  I totally relied on the people on the
24 ground who actually generated this information
25 relative to accuracy and completeness of it.

99

JAMES KEE

- - - -

1   Q.   And if I ask you questions about how the
2   labor charges were quantified for this back
3   charge, can you answer any questions about that?
4   A.   No, sir.
5   Q.   And if I ask you questions about what
6   specific areas of the project patching and
7   grinding took place, can you answer any questions
8   about that?
9   A.   No, sir.
10   Q.   And I already asked you this, but I want
11   to make sure I understand:  Throughout this
12   Exhibit 16, there's a number of areas where some
13   handwriting appears, usually in the context of
14   allocated certain dollars to change order 902F,
15   and you don't know whose handwriting that is,
16   correct?
17   A.   No, I don't.
18   Q.   Do you know anything about what
19   methodology was used by HBE to determine that
20   Burchick installed concrete that was allegedly
21   out of tolerance?  I mean, how did HBE determine
22   that?
23   A.   I don't know specifically what they did.
24   The specifications referred to a straight edge
25   method, and there is ACI 117 which gives the

WORDZ R US
(412) 655-1553

100

JAMES KEE

- - - -

1  tolerance over a ten foot span.

2     Q.   How is that measured?

3     A.   They can do that with a -- you know what?

4  I'm not going to tell you how he did it because I

5  didn't see him do it, but they can do that with a

6  developed straight edge and actually measure the

7  variation.  I don't know what they -- whether he

8  used a screen or what.

9     Q.   Early this morning, we were talking about

10 spec section 3.11B2.

11    A.   Yes.

12    Q.   Is that the spec section that HBE is

13 making reference -- they're not making reference

14 to the spec section in this letter, I understand

15 that, they're saying things are out of tolerance.

16 Is the spec section you gave me the spec section

17 we ought to be talking about here?

18    A.   For the most part, unless there are

19 others that apply to other back charges, which if

20 it was on column work, for example, that would be

21 a different spec section.

22    Q.   I'll ask you about another document.

23              (Kee Deposition Exhibit No. 17

24        was marked for identification.)

25 BY MR. FERNSLER:

WORDZ R US
(412) 655-1553

101

JAMES KEE

- - - -

1     Q.  The witness has been handed Exhibit 17,
2  which is a letter from HBE to Burchick, dated
3  May 21, 2004.  And, Mr. Kee, I recognize also
4  that you're not the author or even copied on
5  this.  But I want to ask you about it, because it
6  does reference the spec section, and the issue,
7  the subject line reads, Floor Leveling.
8     A.  Um-hmm.
9     Q.  And it indicates that the second
10 paragraph -- sorry, the first paragraph in this
11 letter is to inform Burchick Construction of a
12 forthcoming deduct change order for the excessive
13 work associated with floor preparation for floor
14 covering installation.  In the northeast corner
15 of the first floor, Burchick Construction has
16 failed to meet the contractual obligation of
17 Specification 3.10, Paragraph I or L, I'm not
18 sure.  On May 17, 2004, employees of Burchick
19 Construction performed remedial work in the slab
20 area, however, a significant area of the slab
21 remains out of tolerance.  This area is a
22 surgical suite and the floor covering is
23 predominantly sheet goods.  End quotes.  Do you
24 see that?
25    A.  Yes.

WORDZ R US
(412) 655-1553

                                                                102
                           JAMES KEE

                           - - - -

1     Q.   Is this the floor leveling issue that
2   you're making reference to, is this what the back
3   charge is about?
4     A.   In part.
5     Q.   Okay.  What else?
6     A.   I think there were a number of areas
7   throughout the building that were not -- either
8   they weren't brought into tolerance when the work
9   was done or weren't done at all.
10    Q.   Well, the complaints in the May 2004
11  letter, is this the same work that Penn
12  Installations and these contractors performed
13  that make up the back charge?
14    A.   I would believe that that's part -- in
15  part what happened here.  I mean, I believe that
16  cost related to whoever was prepping the floor,
17  whether it was Penn, is reflected in the back
18  charge.
19    Q.   But you can't tell me, sitting here
20  today, whether Penn Installations was the
21  subcontractor --
22    A.   That did this work?
23    Q.   -- that did this work?
24    A.   I don't know.
25            (Kee Deposition Exhibit No. 18

                    WORDZ R US
                   (412) 655-1553

                                                               103
                        JAMES KEE
                         - - - -
1        was marked for identification.)
2   BY MR. FERNSLER:
3        Q.   The witness has been handed Exhibit 18,
4   which is a letter from Burchick to Phil
5   Bosanquet, I think --
6        A.   That's a good attempt.
7        Q.   -- at HBE, dated May 25, 2004, signed by
8   Dave Meuschke from Burchick, and it's copied to
9   several individuals, including Jim Kee.
10            Mr. Kee, this is a letter from Burchick
11  in response to Exhibit 17, the letter we just
12  talked about.
13       A.   Okay.
14       Q.   And the last paragraph on the first page
15  says, quotes, your letter also references
16  non-compliance to Specification Section 3.10.I
17  To make this statement, HBE must have independent
18  inspection reports to substantiate this claim.
19  Burchick is requesting that HBE provide specific
20  data or inspection reports which support this
21  claim of non-compliance, end quotes.  Do you see
22  that?
23       A.   Yes, I do.
24       Q.   HBE didn't have any independent
25  inspection performed, correct?

                       WORDZ R US
                     (412) 655-1553

104

JAMES KEE

– – – –

1   A.   I'm not aware of any.

2   Q.   I'm going to show you another document.

3          (Kee Deposition Exhibit No. 19

4     was marked for identification.)

5   BY MR. FERNSLER:

6   Q.   The witness has been handed Exhibit 19,

7   which is a letter from HBE, dated June 14, 2004,

8   from Jon Alderman, addressed to Dave Meuschke at

9   Burchick. This letter is in response to the

10  Burchick letter of May 25, 2004, which is Exhibit

11  18. And in it, HBE says, quote, it is our

12  intention to contact an independent firm and have

13  them complete a floor slab survey and a

14  petrographic analysis of the slab areas in

15  question. Should this analysis confirm HBE's

16  observations, Burchick will bare the direct

17  expense of all survey and laboratory work. In

18  addition to this, (based on the findings) it is

19  also expected that Burchick be responsible for

20  all corrective work required. We will provide

21  you with a copy of the survey documents. End

22  quotes. Do you see that?

23  A.   Yes.

24  Q.   HBE didn't do that, right?

25  A.   I am not aware of that.

WORDZ R US
(412) 655-1553

                                                                  105
                            JAMES KEE

                             - - - -

1      Q.   Okay.  Are you not aware of whether they

2   did the surveys, or whether they supplied the

3   surveys to Burchick, or both?

4      A.   Both.

5      Q.   Okay.  And the work that's referenced in

6   this letter from Jon Alderman, HBE, is the same

7   work that's the subject of the back charge in

8   this litigation, is it not?

9      A.   I believe so.

10              MR. FERNSLER:  The next document is

11  Exhibit 20.

12              (Kee Deposition Exhibit No. 20

13        was marked for identification.)

14  BY MR. FERNSLER:

15     Q.   The witness has been handed a collection

16  of papers marked as Exhibit 20, bearing Bates

17  number D-476 through D-490.

18              Mr. Kee, take a minute to look at this.

19  I'm looking at the first page, and it says it's a

20  change order, it says to Thomarios.  Do you see

21  that?

22     A.   Yes.

23     Q.   And Thomarios is listed on the second

24  page of Exhibit 16 as one of the subcontractors

25  that apparently did some of the work under change

                         WORDZ R US
                        (412) 655-1553

                                                            106
                          JAMES KEE

                            - - - -

1   order 902F.

2      A.   All right.

3      Q.   And on this first page of Exhibit 20, you

4   see that there in handwriting at the bottom, it

5   says, reference 902F, CC-BC?

6      A.   Yes.

7      Q.   Do you see that?  So, this document was

8   produced to me in this order by HBE, so I'm

9   assuming that these are the documents that HBE is

10  in possession of that supposedly make up the

11  Thomarios portion of back charge 902F.  Is that

12  fair?

13     A.   I don't know if it's the total amount.  I

14  can't read the dollar amount associated with it.

15     Q.   But do you even know if Thomarios is one

16  of the subs that did work under back charge 902F?

17     A.   Only what I can read here.

18     Q.   Same questions as with Penn

19  Installations, you can't answer questions about

20  how the laborer charges were quantified for the

21  back charge, correct?

22     A.   That's correct.

23     Q.   And you don't know exactly what Thomarios

24  did related to the back charge, correct?

25     A.   Correct.

                      WORDZ R US
                    (412) 655-1553

                                                     107
                        JAMES KEE

                          - - - -
 1              MR. FERNSLER:  Next document is
 2     Exhibit 21.
 3              (Kee Deposition Exhibit No. 21
 4        was marked for identification.)
 5     BY MR. FERNSLER:
 6        Q.   The witness has been handed Exhibit 21,
 7     which is a collection of papers bearing Bates
 8     number D-451 through D-464.  And on the first
 9     page of this exhibit, Mr. Kee, it indicates
10     change C-902D, and this is a letter from Easley &
11     Rivers to HBE.  And then on the first page in
12     handwriting, somebody has written, total, C-902F,
13     $3,540.  Do you see that?
14        A.   Yes.
15        Q.   You don't know whose handwriting that is,
16     do you?
17        A.   No, I don't.
18        Q.   On the second page of Exhibit 16, you'll
19     see there's also a handwritten entry for E & R,
20     which I take to mean Easley & Rivers, for $3,540.
21     Do you see that?
22        A.   On the same page, yes.
23        Q.   I'm referring back now to Exhibit 16.
24        A.   I'm sorry.
25        Q.   It's all right.  It's a lot.

                       WORDZ R US
                     (412) 655-1553

                                                               108
                            JAMES KEE

                              - - - -

 1            Do you see there's an entry for E & R?

 2       A.   Yes, I see that.

 3       Q.   3,540?

 4       A.   Yes.

 5       Q.   I take it that Exhibit 21 represents

 6   HBE's project file with respect to Easley &

 7   Rivers' portion of back charge 902F.  Is that

 8   fair?

 9       A.   Appears to be correct.

10       Q.   Okay.  And, again, you don't know what

11   work Easley & Rivers did in connection with the

12   back charge, right?

13       A.   No.

14       Q.   And you don't know how it was priced or

15   quantified, correct?

16       A.   No.

17       Q.   Okay.

18            MR. FERNSLER:  Next document,

19   Exhibit 22.

20            (Kee Deposition Exhibit No. 22

21       was marked for identification.)

22   BY MR. FERNSLER:

23       Q.   I've handed the witness what's been

24   marked as Exhibit 22.  It's a collection of

25   documents bearing Bates number D-465 through

                                                              109
                          JAMES KEE

                            - - - -

1    D-475.

2        A.   (Reviewing document.)

3        Q.   The first page of the exhibit says,

4    Subcontract, Abbreviated Form, and lists HBE as

5    the contractor, and the subcontractor is L.O.

6    Bouquin Co., and in handwriting it reads, total,

7    C-902F, $250.70.

8             On the second page of the exhibit,

9    there's a number of entries, and one of them

10   indicates in handwriting again C-902F, $250.70.

11   And at page D-469 of the exhibit, there's a

12   number of additional entries, and in the

13   right-hand column, indicates BC/Burchick, total,

14   C-902F, $2,256.  Do you see that?

15       A.   Yes.

16       Q.   And based on page 2 of Exhibit 16, which

17   lists L.O. Bouquin at $2,507, I am assuming that

18   Exhibit 22 represents HBE's project file with

19   respect to payments to L.O. Bouquin that they've

20   allocated to back charge C-902F.  Is that fair?

21       A.   Appears to be correct.

22       Q.   You're not familiar with the work L.O.

23   Bouquin did in connection with the back charge,

24   right?

25       A.   No.

                       WORDZ R US
                     (412) 655-1553

```
                                                    110
                        JAMES KEE
                         - - - -
 1     Q.   And your don't know how the price was
 2  arrived at?
 3     A.   No.
 4     Q.   And you don't know exactly what work L.O.
 5  Bouquin performed, right?
 6     A.   That's correct.
 7     Q.   Or when they performed it?
 8     A.   No.
 9          MR. GLASS:  Do you mind if I take a
10  break?
11          MR. FERNSLER:  Off the record.
12          (Recess.)
13  BY MR. FERNSLER:
14     Q.   Mr. Kee, on back charge 902F we've been
15  talking about for $73,140, I'm going to ask you
16  again about page 3 of Exhibit 16.  That's the
17  December 1.
18     A.   Okay.
19     Q.   Do you see that?
20     A.   Um-hmm.
21     Q.   In the calculation of the back charge
22  total $73,140, it indicates HBE administrative
23  fee of $9,540.  Do you see that?
24     A.   Yes.
25     Q.   How was that fee arrived at?
```

                                                                111
                        JAMES KEE
                         - - - -
1       A.   I don't know how it was arrived at in
2    this particular case.  Subcontract provides for
3    charging administrative fees on back charges, and
4    I cannot tell you what the basis of that number
5    was here.
6       Q.   Well, let's look at the subcontract.  I'd
7    like to know where in the subcontract that charge
8    comes from, that's Exhibit 2, that's the hospital
9    subcontract.
10      A.   Refer you to clause A-5.  And it's
11   related to various charges against the
12   subcontract, and towards the end it says, "If the
13   unpaid balance of the Subcontract price shall
14   exceed the cost of finishing the work, (including
15   compensation for additional management and
16   administrative services of Contractor) such
17   excess shall be paid to Subcontractor."
18      Q.   So, the phrase within the parentheses at
19   paragraph A-5 is HBE's basis for charging this
20   what they've labeled as an administrative fee; is
21   that right?
22      A.   That's right.
23      Q.   You don't know how the fee on this
24   particular back charge was arrived at?
25      A.   No, I don't know.  I was going to say I

                        WORDZ R US
                      (412) 655-1553