IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| BURCHICK CONSTRUCTION COMPANY, INC., | ) ) ) |
| Plaintiff, | ) Civil Docket No. 05-CV-12E ) |
| vs. | ) ) |
| HBE CORPORATION, | ) Judge McLaughlin ) |
| Defendant. | (Electronically Filed) |

## CONCISE STATEMENT OF MATERIAL FACTS

Plaintiff, Burchick Construction Company, Inc. ("Burchick") files this Concise Statement of Material Facts in support of its Motion for Summary Judgment in accordance with Local Rule 56.1, as follows:

1. In 2002, UPMC Northwest ("UPMC"), a Pennsylvania non-profit corporation, determined to construct a new 210,000 square foot Hospital (the "Hospital") and a related Behavorial Health Facility in Seneca, Pennsylvania (the "BHF") (the Hospital and the BHF sometimes referred to collectively herein as the "Project"). See, generally, Affidavit of G. Ehringer at Appendix A.

2. UPMC retained Defendant, HBE Corporation ("HBE"), to both perform complete design services for the Project and to act as the general contractor for the construction of the Project. See excerpt of deposition transcript of J. Kee at Appendix B at pp. 19-21.

3. UPMC entered into a contract with HBE for $51,542,412 (including change orders) for the Hospital and a contract with HBE for $2,805,433.00 (including change orders) for the BHF. See Appendix B at pp. 35, 36, and Appendix C (Payment Application No. 36 from HBE to UPMC) and D (Payment Application 20 from HBE to UPMC).

4. HBE retained Burchick pursuant to a contract dated August 14, 2002 (the "Hospital Contract") to perform certain concrete work on the Hospital Project, whereby Burchick would provide the "Concrete and Foundations Package" as that scope of work was enumerated in the contract documents prepared by HBE, for an original principal amount of $2,225,000.00, as adjusted by agreed-upon change orders to $2,366,573.00. See Appendix B at pp. 22, 23 and Appendix E (Hospital Contract).

5. HBE retained Burchick pursuant to a contract dated August 16, 2002 (the "BHF Contract") to perform certain concrete work on the BHF Project, whereby Burchick would provide the "Concrete and Foundations Package" on the BHF for an original principal amount of $395,000.00 as adjusted by agreed-upon change order to $454,708.00. See Appendix B at p. 24 and Appendix F (BHF Contract).

6. Other than the price, the terms and conditions of each of the Hospital Contract and the BHF Contract are identical. See Appendices E and F.

7. Burchick submitted its Application for Payment No. 13 on July 29, 2003 wherein Burchick represented that its work on the Hospital Contract was 100% complete and requested payment for 100% of the balance under the Hospital Contract.[1] See Appendix G.

---

[1] Application for Payment 14 was submitted October 29, 2003 to reflect a request for payment for change order No. 5 with a value of $11,913. No retainage applied to this request.

8.  HBE submitted its Application for Payment No. 18 to UPMC dated July 18, 2003, requesting payment for 100% of Burchick's work. See Appendix A, B at pp. 57, 58 and Appendix H.

9.  HBE's architect of record represented on Application for Payment No. 18 (as in all Applications for Payment), "The Architect certifies to the Owner that to the best of the Architect's knowledge, information and belief the Work has progressed as indicated, the quality of the Work is in accordance with the Contract Documents, and the Contractor is entitled to payment of the AMOUNT CERTIFIED." See Appendix H.

10. UPMC paid HBE for 100% of Burchick's work on the Hospital on or about July 25, 2003. See Appendix A.

11. UPMC does not hold any retainage from HBE for any item of Burchick's work under the Hospital Contract. See Appendix A.

12. As of September 22, 2005, UPMC held no more than $159,000 in retainage in total from HBE on the Hospital Contract of $51,542,412.00 - .3% of the HBE-UPMC Contract balance. See Appendix B at page 43.

13. The Contracts provide, in part:

> Subcontractor shall submit to Contractor monthly applications for progress payments which shall be based upon the Schedule of Values approved by Contractor and shall show the percentage of the Subcontract work completed, less a ten percent (10%) retainage. Said retainage shall be held by Contractor until Subcontractor has substantially performed all of the work in the Subcontract, including any and all extra work, at which time the retainage shall be reduced to five percent (5%) which retainage shall be held by Contractor until final payment is received by Contractor from Owner.
>
> Subcontractor shall be entitled to receive all progress payments and the final payment within ten (10) working days after Contractor receives payment for such from the Owner, except as otherwise provided in the Conditions.

See Appendix E and F.

14. Burchick submitted its Application for Payment No. 8 on October 23, 2003 wherein Burchick represented that its work on the BHF Contract was 100% complete and requested payment for 100% of the balance under the BHF Contract.[2] See Appendix I.

15. HBE submitted its Application for Payment No. 8 to UPMC dated September 30, 2003, requesting payment for 100% of Burchick's work. See Appendix A and Appendix J.

16. HBE's architect of record represented on Application for Payment No. 8 (as in all Applications for Payment), "The Architect certifies to the Owner that to the best of the Architect's knowledge, information and belief the Work has progressed as indicated, the quality of the Work is in accordance with the Contract Documents, and the Contractor is entitled to payment of the AMOUNT CERTIFIED." See Appendix J.

17. UPMC paid HBE for 100% of Burchick's work on the BHF or about October 24, 2003. See Appendix A.

18. UPMC does not hold any retainage from HBE for any item of Burchick's work under the BHF Contract. See Appendix A.

19. HBE did not give Burchick notice of any alleged "deficiency items" within the time period prescribed for payment under the Hospital Contract or the *Contractor and Subcontractor Payment Act*, 73 P.S. § 501 et seq., with respect to Burchick's Payment Application No. 13, such that it could have properly withheld payment of retainage. See Appendix B at pp. 70, 71 and Appendix G.

20. HBE did not give Burchick notice of any alleged "deficiency items" within the time period prescribed for payment under the BHF Contract or the *Contractor and Subcontractor*

---

[2] Application for Payment 9 was submitted February 4, 2004 to reflect a request for payment for change order No. 2 with a value of $13,008. No retainage applied to this request.

- 5 -

*Payment Act*, 73 P.S. § 501 et seq. with respect to Burchick's Payment Application No. 8, such that it could have properly withheld payment of retainage. See Appendix B at pp. 70, 71 and Appendix I.

 

Respectfully submitted,

s/Kurt F. Fernsler
Kurt F. Fernsler, Esquire
Pa. ID. No. 78026
REED SMITH LLP
Firm No. 234
435 Sixth Avenue
Pittsburgh, PA 15219-1886
Phone:(412) 288-3131
Fax:  (412) 288-3063
E-Mail:  kfernsler@reedsmith.com

## **CERTIFICATE OF SERVICE**

    A true and correct copy of the foregoing Plaintiff Burchick Construction Company, Inc.'s Concise Statement of Material Facts and Appendix was served this 12th day of December, 2005, electronically via the Court's ECF system:

Michael D. Glass, Esquire
Polito & Smock, P.C.
Four Gateway Center, Suite 400
444 Liberty Avenue
Pittsburgh, PA 15222-1237

                                                            s/Kurt F. Fernsler